**PENSION BENEFIT GUARANTY CORPORATION, as Trustee for the International Data Services, Inc., Pension Plan & Trust**

v.

**Jack P. FLETCHER.**

**No. MO–89–CA–179.**

United States District Court,
M.D. Texas,
Midland/Odessa Division.

June 11, 1990.

Bruce H. James, Atty., Office of Gen. Counsel, Pension Ben. Guar. Corp., Washington, D.C., for plaintiff.

Jack P. Fletcher, pro se.

ORDER ON MOTION FOR
SUMMARY JUDGMENT

BUNTON, Chief Judge.

Before this Court is the Motion of the Plaintiff, the Pension Benefit Guaranty Corporation ("PBGC"), for Summary Judgment in the above-captioned cause, along with its Brief in support thereof, and the

Defendant's timely-filed Affidavit in Response thereto. Upon consideration of the Motion and Brief, the Response, and the applicable law, this Court is of the opinion Plaintiff's Motion has merit and should be granted.

This suit arises from the Plaintiff's claim the Defendant as a former Trustee of the International Data Services, Inc., Pension Plan and Trust (the "Plan"), breached his fiduciary duties to the Plan and further violated Sections 404 and 406 of the Employee Retirement Income Security Act ("ERISA"), Title 29, United States Code, Sections 1104 and 1106, by transferring $150,000.00 in Plan assets from the Plan's trust account to his own personal accounts. Defendant does not deny that the transfers of which Plaintiff complains did occur, but rather that such transfers dispensed funds in accord with the Plan and to protect assets of the plan, and did not violate ERISA.

## FACTUAL BACKGROUND

It appears from the contents of Plaintiff's Motion and Defendant's Responsive Affidavit the following facts are not in dispute. Defendant was the president and 50% shareholder of a Houston, Texas corporation that purchased International Data Services, Inc. ("IDS"), a California corporation, in June of 1984 under the IDS Chapter 11 Plan of Reorganization. IDS had established a defined benefit pension plan for its employees in 1981. During pre-purchase discussions with an IDS officer, Defendant became aware of the Plan's existence and the fact the plan had an estimated $150,000.00 surplus.

In 1985 Defendant and two other individuals were appointed as Plan trustees, replacing former trustees who had been officers of IDS before the corporation was purchased. Also in 1985 the new IDS Board of Directors, which included the Defendant, voted to terminate the Plan and sent notice to plan participants. Thereafter, in 1985, Defendant caused the Plan to transfer its assets, valued at some $198,650.00 in cash and land trusts, from a New York Merrill, Lynch account, to a Texas money-market account of "Jack Fletcher Trustee for International Data Services, Inc." Then, on various dates in 1985 and 1986, Defendant caused the Plan to transfer a total of $150,000.00 to a personal joint account in the name of Jack and Linda Fletcher, and to two Texas banks for the purchase of certificates of deposit in the name of Jack Fletcher.

It is not disputed Defendant made the above-referenced transfers before any allocation and distribution of Plan assets to Plan participants had been made as required by Section 4044 of ERISA, 29 United States Code, Section 1344 and 29 C.F.R. Section 2617.21. The PBGC, after determining the required distribution had not been made and the Plan no longer had assets with which to pay benefits, was appointed statutory trustee of the Plan by the United States District Court for the Southern District of Texas in 1989. When the Plan was terminated, Defendant certified the Plan had total assets of $194,652.21 in the pension trust, and had vested accrued benefits totalling $42,867.02. As of September, 1988, the Plan had assets in its account totalling $464.13.

## STANDARD ON MOTION FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Rule 56(e) provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.

Thus, the focus of this Court is upon disputes over material facts, facts that might affect the outcome of the lawsuit under the governing substantive law. The existence of such a dispute will preclude summary judgment. See Anderson v. Lib-

*erty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir.1987), cert. denied, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987), and the cases cited therein.

The Supreme Court's 1986 trilogy of summary judgment cases clarified the test for granting summary judgment. In *Anderson v. Liberty Lobby*, it was held the trial court must consider the substantive burden of proof imposed on the party making the claim. In the case before this Court, the PBGC has the burden with respect to its claims; the Defendant has the burden with respect to defenses that might be available to him. The Court in *Anderson v. Liberty Lobby* defined "material" as involving a "dispute over facts which may affect the outcome of the suit under the governing law." Further, *Anderson v. Liberty Lobby* requires this Court to substantively evaluate the evidence offered by the moving and non-moving party to determine whether the evidence raises a "material" fact question which is "genuine."

In a second case, the Supreme Court reiterated that where the party moving for summary judgment has established prima facie that there is no genuine issue as to any material fact, the non-moving party must then come forward with "specific facts" showing a genuine issue for trial. It must be "more than simply ... that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

A third case, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) held that where the moving party shows that the opposing party is unable to produce evidence in support of its case, summary judgment is appropriate. In the *Celotex* case, it was not necessary for the motion for summary judgment to be supported by affidavits or other material specifically negating the non-moving party's claim, so long as the District Court was satisfied that there was an absence of evi-

dence to support it. At that point the burden shifted to the non-moving party to produce evidence in support of its claims; if it did not produce any, summary judgment was required.

This Court has demonstrated its willingness to allow a non-moving party his day in court in borderline cases where under governing law or reasonable extensions of existing law, the hearing of some testimony would be helpful to understand the proper application of the law. The suit at bar, however, does not present this Court with issues necessary to be heard by a trier of fact. Instead, the defenses raised by the Defendant are appropriate for summary judgment.

### ISSUES OF FACT AND LAW

■ Plaintiff offers two statutory grounds for its contention Plaintiff breached fiduciary duties imposed by ERISA, those being Section 406, Title 29, United States Code, Section 1106, and Section 404, Title 29, United States Code, Section 1104.

Section 406(a)(1)(D) provides in pertinent part "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction if he knows or should know that such a transaction constitutes a direct or indirect ... transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan...." Defendant does not contest the fact he was a fiduciary of the Plan. Nor does Defendant contest that the transactions complained of constituted direct or indirect transfers a party in interest, were caused to be made by the Defendant, and were knowingly made to a party in interest. Defendant replies the transfers, though knowingly caused by himself to be made to himself and his wife, were in fact made to protect the Plan from a scheme by Plan participants to hide excess assets of IDS from the Bankruptcy Court by assigning them to the Plan.

Section 406 on its face does not require culpable motive. Assuming without finding the illicit scheme alleged by Defendant to have existed, Defendant's conduct still falls within the reach of Section 406 and therefore constitutes a breach of fiduciary

duty under that Section. Defendant's Affidavit admits the elements required to make out a violation of Section 406, and therefore does not raise a genuine issue of material fact.

■ Defendant contends the Plan's excess assets he transferred were the property of the company, not the Plan, and were used for the benefit of the company. However, as Plaintiff points out, the residual assets of a single-employer plan such as the Plan in issue here may not be distributed to the employer unless all liabilities of the Plan to participants and their beneficiaries have been satisfied, under the terms of Title 29, United States Code, Section 1344(d)(1). Defendant admits three former officers of IDS who were participants or beneficiaries have never been paid benefits pursuant to the Plan. Thus Defendant's contention the residual assets were property of the company is immaterial under the governing law and the uncontroverted facts.

Section 404 creates an obligation on ERISA fiduciaries. The nature of this obligation has been described as the obligation to "discharge [fiduciary] duties solely in the interests of the participants and beneficiaries ... for the exclusive purpose of providing benefits to them ... with the care, skill, prudence, and diligence ... of the traditional 'prudent man.'" *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982). Defendant admitted he transferred Plan assets to his personal accounts, and does not contest the fact such transfers caused the Plan's assets to fall below the amount necessary to pay the Plan's outstanding commitments. Section 404 imposes a stringent obligation. Allowing the assets of the Plan to fall below its commitments, even in an effort to thwart an alleged fraudulent scheme, violates that obligation. The Court believes Defendant has failed to raise a genuine issue of material fact as to Plaintiff's contention Defendant's challenged conduct violated his obligation to act solely in the interest of the participants and beneficiaries for the exclusive purpose of providing benefits to them,

and fell short of the degree of prudence required of an ERISA fiduciary.

In consideration of the foregoing, the Court believes Plaintiff's Motion for Summary Judgment is meritorious and should be granted. Accordingly,

IT IS ORDERED the Motion of Plaintiff, the Pension Benefit Guaranty Corporation, is hereby GRANTED. A separate Judgment in this matter shall issue forthwith.

IT IS FURTHER ORDERED the Plaintiff shall brief the Court on the statutory basis of its claim for prejudgment interest on the amount taken by Defendant from the Plan, or alternatively, the profits Defendant actually earned from his breach of fiduciary duty, within 10 days of the entry of this Order. Defendant shall file his responsive brief, if any, within 10 days of the day on which Plaintiff files its Brief.

IT IS FURTHER ORDERED the Plaintiff shall brief this Court on the statutory basis of its claim for attorney's fees, and the amount of fees claimed according to the standards of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), within 10 days of the entry of this Order. Defendant shall file his responsive brief, if any, within 10 days of the day on which Plaintiff files its Brief.